**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| Quartz Auto Technologies LLC | |
| Plaintiff, | **Civil Action No.:** 1:26-cv-925 |
| v. | JURY TRIAL DEMANDED |
| Lyft, Inc. | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT
AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Quartz Auto Technologies LLC ("Quartz Auto" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Lyft, Inc. ("Lyft" or "Defendant"), and would respectfully show the Court as follows:

**PARTIES**

1. Plaintiff Quartz Auto is a Maryland limited liability company with its principal place of business located at 301 S. Fremont Ave., Baltimore, Maryland 21230.

2. On information and belief, Defendant Lyft is a Delaware corporation with its principal place of business located at 185 Berry Street, Suite 5000, San Francisco, California 94107. Defendant is registered to conduct business in Texas, and may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

**JURISDICTION AND VENUE**

3. This is a civil action for patent infringement arising under the Patent Laws of the United States as set forth in 35 U.S.C. §§ 271, *et seq*.

1

4.      This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and pendant jurisdiction over the other claims for relief asserted herein.

5.      This Court has personal jurisdiction over Defendant pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq*. Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this District, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this District. Personal jurisdiction also exists because, on information and belief, Defendant has: (1) operated the Internet website, https://www.lyft.com/ and provided mobile applications in order to provide ride-hailing services to users, including both riders and drivers, within this judicial District; (2) operated within the judicial District, with ride-hailing services offered to users in locations including Austin, El Paso, San Antonio, and Waco; (3) solicited business and actively advertised to residents within the District, including by actively recruiting and hiring additional drivers to provide Defendant's ride-hailing services; (4) transacted business within the State of Texas; (5) either alone or in conjunction with others, actively committed acts of infringement within this District and induced others to commit acts of infringement within this District; (6) established regular and systematic business contacts within the State of Texas and within this District; and (7) continued to conduct such business in Texas through the continued operation within this District. Accordingly, this Court's jurisdiction over Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from Defendant's purposeful minimum contacts with the State of Texas.

2

6.      This Court also has personal jurisdiction over Defendant, because in addition to Defendant's own online website and advertising within this District, Defendant has also made its ride-hailing services available specifically within this District via the following means:

A. Offering ride-hailing within the District, in locations including:

- Austin (https://www.lyft.com/rider/cities/austin-tx)

- El Paso (https://www.lyft.com/rider/cities/el-paso-tx)

- San Antonio (https://www.lyft.com/rider/cities/san-antonio-tx)

- Waco (https://www.lyft.com/rider/cities/waco-killeen-tx)

B. Actively advertising to District residents to hire more drivers within this District. For example:

- Austin (https://www.lyft.com/driver/cities/austin-tx)

- Waco (https://www.lyft.com/driver/cities/waco-killeen-tx)

C. Actively promoting working for Lyft to District residents who have downloaded the Lyft Rider application by including "Drive with Lyft" in the application drop down menu, and incentivizing new drivers with guaranteed money dependent on "X" number of drives in the first 30 days (guaranteed money amount and number of drives depends on location).



*Lyft Rider Application Screenshots February 16, 2020*

D. On information and belief, maintaining facilities in the district: 6375 US-290, Austin, TX 78723, 7020 E. Hwy Suite C, Austin TX 78723, 8610 Broadway Suite 240, San Antonio, TX 78217.

7.     Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendant's substantial business in this forum, including: (i) committing at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

8.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) based on the information and belief that Defendant has committed or induced

4

acts of infringement in this judicial District, as more specifically alleged below in paragraphs 9–12. In addition, Defendant maintains regular and established places of business in this district, as discussed in paragraph 6(d). The Lyft facilities are each physically located within this District and are regular and established places of business. On information and belief, the facility in Austin has been in operation since in or around January 2020. On information and belief, the facility in San Antonio has been in operation since at least September 2018.

9.      Venue is proper as to U.S. Patent No. 10,043,384 ("the '384 patent") because, as alleged in further detail herein, Defendant, in conjunction with its employee drivers, has committed acts of direct infringement of the '384 patent in this District at least by practicing steps of the claimed methods in this District, and by making and using the claimed systems and computer program products in this District. To the extent that the drivers are not employees of Defendant, the drivers' acts in this District are nevertheless attributable to Defendant under principles of joint infringement. On information and belief, Defendant has also committed acts of direct infringement in this District through other Lyft employees who have and continue to make and use the claimed systems and computer program products in this District for development, testing and/or demonstration purposes. On information and belief, discovery will confirm whether Defendant has further directly performed one or more steps of the accused methods on one or more servers located in this District.

## THE PATENT-IN-SUIT

10.      On August 7, 2018, the '384 Patent, entitled "Management of Mobile Objects and Service Platform for Mobile Objects" was duly and legally issued by the USPTO to Tomohiro Miyahira and Gaku Yamamoto, with IBM as assignee. A copy of the '384 patent is attached hereto as **Exhibit A** and is referred to hereinafter as the "Quartz Auto Patent" or the "Asserted Patent."

11.    Plaintiff Quartz Auto is the owner of the entire right, title, and interest in and to the Quartz Auto Patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the Quartz Auto Patent. The Quartz Auto Patent was originally owned by and assigned to IBM, as assignee from the inventors thereof. IBM transferred ownership of the Asserted Patent to Daedalus Group, LLC ("Daedalus") pursuant to a Patent Assignment Agreement entered into on September 30, 2019, and, through Plaintiff's immediate predecessor in interest, Slingshot IOT LLC, the Asserted Patent was ultimately assigned to Quartz Auto on or about February 13, 2020 and February 14, 2020, and recorded in the USPTO, with all right, title, and interest in and to the Asserted Patent to Quartz Auto.

12.    The Quartz Auto Patent is presumed valid under 35 U.S.C. §282.

**United States Patent No. 10,043,384**

13.    In one embodiment, the '384 patent discloses and claims a system comprising a mobile object server that receives information from a plurality of mobile objects within a geographic space and performs a process associated with each mobile object. A notification is provided if one mobile object has become distanced from a predetermined location or region. The mobile objects may be manned/unmanned automobiles, motorbikes, bicycles, humans having a digital device, airplanes, vessels, drones, or the like (col. 2, lines 51–53). In the present complaint, Defendant's ride-hailing system and method infringe on these inventive aspects of the '384 patent. Defendant's servers monitor the progress/location of the driver, and perform a process of updating the navigation information provided to the driver via the Lyft Navigation, Google Maps, or Waze navigation applications, with updated estimated times of arrival based on the speed, current traffic, and other considerations encountered by the driver. Defendant's servers also function to provide

notifications to the Driver and Rider applications running on the respective devices of the driver and passenger in the event that the driver becomes distanced by a threshold amount from a predetermined location or region.

14.    The '384 patent overcomes shortcomings in the prior art, which failed to account for the inherent problem that as the geographic space being handled expands, the number of automobiles and the number of roads increases, thereby increasing the amount of information being sent and received to a level that surpasses the processing capabilities of the server, nor allows different information and services to be provided to each automobile and driver in real time (col. 1, lines 17–25). Certain of the inventive aspects of the '384 patent addressed the need for improvements in managing the geographic space and mobile objects within the geographic space (col. 27, lines 49–52). These aspects were not well-understood, routine, or conventional at the time of the invention.

## DEFENDANT'S INFRINGING METHODS, SYSTEMS, AND PRODUCTS

15.    Defendant has represented that it has developed and implements "one of the largest transportation networks in the United States," operating in hundreds of unique markets. Through its technology platform, referred to herein as the "Lyft Platform," Defendant offers, coordinates, and controls, among other things, ride-hailing services. On information and belief, Lyft employs hundreds of thousands of drivers in connection with its ride-hailing services.

16.    On information and belief, Defendant uses the Lyft network/servers in combination with the Lyft Rider/passenger application and the Lyft Driver application to operate, direct, and control ride-hailing services. For the purposes of this complaint, the term "Lyft Platform" encompasses all such hardware, applications, and functionalities and any related Lyft technologies that interface with the Lyft Driver and Rider apps and server systems to provide ride-hailing services.

17. On information and belief, Defendant operates a network/server infrastructure with its riders/passengers and drivers.

18. On information and belief, Defendant operates, controls, and provides a "Rider" application that, among other things, allows Lyft passengers/customers to request a ride. For the purposes of this complaint, passenger application/app and Rider application/app, as well as any different, unambiguous iterations, are used interchangeably.

19. On information and belief, Defendant operates, controls, and provides a "Driver" application that, among other things, allows Lyft drivers to accept ride requests and perform related activities. For the purposes of this complaint, Driver application/app and any different, unambiguous iterations, are used interchangeably.

20. Plaintiff alleges that Lyft drivers are employees of Defendant for purposes of the acts of infringement alleged herein, for at least the reasons that: (i) Defendant is a transportation company whose ride-hailing business is that of transporting passengers for compensation, and drivers perform work that is central, not tangential, to the usual course of Defendant's entire ride-hailing business, which would not be a viable business without its drivers; (ii) the performance of that work is not free from the control and direction of Defendant; (iii) Defendant sets drivers' qualification standards, solicits applications, conducts background checks on applicants, engages certain applicants as drivers while rejecting others, and enters into standard form contracts with drivers; (iv) drivers cannot build own their own passenger client base—they must take rides provided by Defendant via the Driver app; (v) drivers cannot fix prices and Defendant sets all prices; (vi) Defendant prescribes rules regarding car maintenance and manners that must be followed; (vii) Defendant handles all payment processing; and (viii) Defendant approves driver

8

applications and can cancel use of the platform by particular drivers and/or impose sanctions on drivers.

## COUNT I
## INFRINGEMENT OF THE '384 PATENT

21. Plaintiff Quartz Auto repeats and realleges the above paragraphs, which are incorporated by reference as if fully restated herein.

22. Plaintiff Quartz Auto is the owner of all rights, title, and interest in the '384 patent and, at a minimum, of all substantial rights in the '384 patent, including the exclusive right to enforce the patent and all rights to pursue damages, injunctive relief, and all other available remedies for past, current, and future infringement thereof.

23. Plaintiff Quartz Auto and its predecessors in interest have never licensed Defendant under the '384 patent, nor has Plaintiff Quartz Auto otherwise authorized Defendant to practice any part of the '384 patent.

24. The '384 patent is presumed valid under 35 U.S.C. § 282.

25. The '384 patent relates to, among other things, the management of mobile objects and a service platform for mobile objects.

26. On information and belief, Defendant operates, provides, and controls systems and methods that coordinate ride-hailing services using passenger and driver applications to manage mobile objects (drivers' mobile devices).

27. **Direct Infringement**: On information and belief, Defendant alone and/or in conjunction with agents or parties under its control, has directly infringed and continues to directly infringe the '384 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, and using systems, methods, and computer programs and related services for coordinating, controlling, and providing ride-hailing services that are covered

9

by one or more claims of the '384 patent, in particular, system claims 1–9, method claims 10-12, and computer program product claims 13–15 of the '384 patent, without license or authority. The infringing activities utilize applications operated or licensed by Defendant that can be used on a variety of mobile computing devices that monitor the locations of mobile objects (drivers' mobile devices) within a geographic area. On information and belief, infringement of the '384 patent by these Lyft ride-hailing products and applications is demonstrated below.

28.    System claim 1 of the asserted claims recites:

*1.  A system comprising:*

*a mobile object server operable to receive car probe data containing location data from a GPS from each of a plurality of mobile objects within a geographic space; and perform a process associated with each mobile object, wherein the mobile object server is operable to perform processes by mobile object agents associated with the plurality of mobile objects;*

*a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, wherein the first additional process is associated with one mobile object of the plurality of mobile objects, wherein the registration server is operable to register the first additional process with one mobile object agent associated with the one mobile object, and wherein the registration server is operable to register the first additional process and a call-up condition by the one mobile object agent; and*

*the mobile object server is operable to call up the first additional process in response to the call-up condition being satisfied during performance of the one mobile object agent.*

29.    On information and belief, the Lyft Platform, using the specific components identified on a limitation-by-limitation basis below, comprises a system that infringes the '384 Patent. For example, at trial over U.S. Patent No. 9,460,616 ("the '616 Patent") in 1:20-cv-00719-ADA ("trial on the '616 patent"), Dr. Sam Malek testified that the Lyft Platform was a system:

*Q.  Is the Lyft rideshare platform a system?*
*A.  Yes. It is.*

10

Trial Transcript, 338:13-14.

30. In addition, on information and belief, the Lyft Platform includes <u>a mobile object server</u>. The Court construed "mobile object(s)" to mean "manned or unmanned automobiles, motorbikes, bicycles, humans having a digital device, airplanes, vessels, drones, or the like operable to communicate with a mobile object server." The below quotes and screenshots demonstrate that Lyft has **a mobile object server** (e.g., Envoy or "front proxy"), which perform the functions herein described:



Source: https://eng.lyft.com/lyfts-journey-through-mobile-networking-d8e13c938166
(PX-42 at 13-14)



"The *first server that our users will hit when they open up* their phone to request a ride is this piece of infrastructure we built, *which is a front proxy* as well as an inter-service communication bus for all our different microservices. And what this service does, it maintains a local cache of every other service at Lyft and all the instances associated with it. And that allows us to route that request to the lowest latency, healthiest service at any given time."

Source: https://www.youtube.com/watch?v=sjpP2ynkCbo (PX-97)

11

31.    Lyft's mobile object server is <u>operable to receive car probe data containing location data</u> from a GPS from each of a plurality of mobile objects within a geographic space. For example, Lyft describes that location data flows from both riders' and drivers' mobile devices into its back-end architecture which uses a mobile object server:



Source: LYFT-QUARTZ_SC_000123 (PX-513)

32.    More specifically, Lyft's mobile object server is operable to receive car probe data containing location data **from a GPS** from each of a plurality of mobile objects within a geographic space. For example, Lyft describes that location data **in the form of GPS data** flows from both riders' and drivers' mobile devices into its back-end architecture which uses a mobile object server:



Source:
https://web.archive.org/web/20251212183358/https://www.lyft.com/privacy#privacy-how-we-use-your-information (PX-639 at 2)



Source: Lyft-QA-00115526 (PX-467 at 18)



Source: Lyft-QA-00115527 (PX-467 at 19)

33.    During trial on the '616 patent, Dr. Malek testified regarding PX-640 that GPS data was being collected:



Source: Lyft-QA-00115530 (PX-640 at 33)

*Q.   What is a process associated with each mobile object that exists on the Lyft system?*
*A.   PX-640 is describing a process called a realtime map matching, and map matching is this process of determining where the -- the ride is, or where a mobile object is on a map. So as your GPS data is collected, it's trying to determine what road you're on. And if you are, for example -- it's tracking also whether you are on – for example, if you have a predefined route, if you're on that predefined*

14

*route. And it does this, in this diagram -- or in this document, it's describing how it does this based on the last 20 seconds of data collected from the user device.*

Trial Transcript, 352:15-353:3.

34.     In addition, Lyft's mobile object server is operable to receive car probe data containing location data from a GPS from each of a plurality of mobile objects **within a geographic space**,

35.     During trial on the '616 patent, Dr. Malek concluded that Lyft practiced element 1[a]:

*Q.   Let's go to the second limitation. What's that second Limitation 1[a]?*
*A.   The second limitation requires a mobile object server operable to receive information from each of a plurality of mobile objects within a geographic space.*

Trial Transcript, 338:15-19.

*Q.   Okay. Based on your source code analysis, what is your conclusion as to whether Element 1[a] of the claim has been met?*
*A.   I've determined that that limitation is practiced, meaning that they use that limitation in their system.*

Trial Transcript, 350:10-15.

36.     Moreover, The Lyft Platform includes a mobile object server operable to perform a process associated with each mobile object. Lyft designed its system such that it is continuously collecting location data from the rider and driver mobile devices. Lyft uses this location data in a variety of ways, including for real-time map matching:

15



Source: Lyft-QA-00115530 (PX-640)

**The Lyft Platform provides real-time map-matched routes:**

### Locations OKRs

| Increase streets, locations, and viewport stability and performance to ensure a reliable Pax and Driver experience | Base | Target | Current |
|---|---|---|---|
| Locations and Viewport uptime is 99.95% | 99.50% | 99.95% | 99.42% |
| Streets uptime is 99% | 99.01% | 99.95% | 99.71% |
| Maintain a 2.5s SLA for p99 Map-Match calls | 80.94% | 99.00% | 62.91% |
| Reduce percent of map-match calls falling back | 11% | 5% | 8% |
| | | | |
| **Accurate locations in all regions for distance and directional cars** | | | |
| Real-time map-matched routes have accurate locations (measured in meters) | 2.31 | 1.96 | 0.79 |
| Real-time map-matched routes have accurate bearings (measured in degrees) | 5.64 | 3.95 | 2.81 |
| Real-time distances are as accurate as static distance calculations | 5.34% | 3.74% | 5.31% |
| Completely roll out directional cars | 0 | 1 | 0.9 |

PX-482.21

Source: Lyft-QA-00137815 (PX-482 at 21)



Source: Lyft-QA-00115533 (PX-467 at 25)



Source: Lyft-QA-00115528 (PX-467 at 20)

37.    During the trial on the '616 patent, Dr. Malek concluded Lyft practiced element

1[b]:

*Q. Let's move on to Element 1[b]. Describe and discuss Element 1[b], Dr.*
*Malek.*
*A. This limitation requires a mobile object server perform a process associated*

17

*with each mobile*
*object.*
*Q.   Did you identify evidence that indicates where this limitation is met in the*
*Lyft system?*
*A.   Yes. There are many processes that are performed that are provided for each*
*mobile object. I'm going to talk about one of them.*

Trial Transcript, 350:16-25.

38.      The Lyft Platform includes a mobile object server operable to perform processes

by mobile object agents associated with the plurality of mobile objects. Lyft's mobile applications,

and the associated data that allows the driver or rider to request and receive data or services

constitute mobile object agents:



Source: https://eng.lyft.com/lyfts-journey-through-mobile-networking-d8e13c938166
(PX-42 at 14)

39.      At trial on the '616 patent, Dr. Malek gave the following testimony regarding the

mobile object agent and PX-42:

*A.   So a mobile object agent is assigned to each mobile object. And this is*
*basically software applications and associated data that allows a rider or driver*
*to access the services and processes. So in the context of the Lyft system, it's the*
*Lyft app basically. It's the Lyft app and the associated data that allows the -- that*
*allows the riders and drivers to be able to access the services that are provided by*
*the Lyft platform.*
*Q.   Like a little brain for the -- each mobile object?*
*A.   Yes. So if you can imagine -- I mean, you have the smartphone, right? That's*

18

*the mobile object that is held by the driver and the rider, and the Lyft app is what is installed -- is assigned to that mobile object and allows the smartphone to then be used to interact and receive services and processes from the Lyft system.*

*Q.   Okay. Does the Lyft system use a mobile object agent that receives additional processes from the mobile object server?*

*A.   Yes. It does. And on this slide, I'm showing you an architectural diagram that I've shown earlier. Again, the blue indicates the mobile object server, and the mobile object agent is the -- is the -- is the Lyft or driver rider app. And I discuss how this app can be used to access the services that are provided by the front proxy. And then there are processes that are provided by the -- by the front proxy, by the mobile object server, for multiple mobile object agents, including something called locations.*

Trial Transcript, 408:2-409:8.

40.      Additionally, Lyft's mobile object server sends location information requests to the "locations" service, for example. "Locations" represents a collection of processes related to locations of drivers and riders. These are accessed by the mobile object through Lyft's mobile object server:



Source: Lyft-QA-00012719 (PX-274 at 1)

19



Source: Lyft-QA-00012721-22 (PX-274 at 3-4)



Source: Lyft-QA-00012722 (PX-274 at 4)



Source: Lyft-QA-00012720 (PX-274 at 2)

20



```
/search:
  get:
    description: Get current user locations in a given geographic region
    parameters:
      - name: min_lat
        in: query
        type: number
        format: float
        description: min latitude when searching by bounding box
        required: false
      - name: max_lat
        in: query
        type: number
        format: float
        description: max latitude when searching by bounding box
        required: false
      - name: min_lng
        in: query
        type: number
        format: float
        description: min longitude when searching by bounding box
        required: false
      - name: max_lng
        in: query
        type: number
        format: float
        description: max longitude when searching by bounding box
        required: false
```

Source: LYFT-QUARTZ_SC_000070 (PX-505)

41.     Additionally, The Lyft Platform includes a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, in association with one mobile object among the plurality of mobile objects.

42.     The Court determined that "first basic process" and "first basic process common to the plurality of mobile objects" are not indefinite and that no construction of the phrases is necessary. Lyft has **a registration server** operable to register processes:



"will talk to a piece of infrastructure we built called **the discovery service**, which is its own cluster. And that discovery service maintains a list of all services at Lyft that it stores in DynamoDB. And when new instances come online, they'll *register themselves with the discovery service*. That'll get stored in Dynamo. And *then any service that asks for the latest state of the world can get that*, again, out of band asynchronously from discovery service."

Source: https://www.youtube.com/watch?v=sjpP2ynkCbo (PX-97)

As Dr. Malek confirmed this while testifying at trial on the '616 patent:

Q.  *Now, let's turn to -- so we've confirmed the registration server exists; is that correct?*
A.  *Yes.*
Q.  *That's the DS?*
A.  *That's right.*

Trial Transcript, 364:12-16.

43.    Lyft's registration server is the "discovery service." The mobile object server registers with it to obtain different available services. Lyft's "DS" registers and stores services, such as those running on the mobile object server. All the services the Lyft computer network can provide to a mobile object will have an internet address.  The mobile object server needs that address so that it can access additional services. The registration server responds with the location of the requested service that will be used by the mobile object server. Server S2 provides additional services to the mobile objects via the registration server (see below):



DS = "Discovery Service"
**Registration Server**

"<u>So</u> what that means is *in order for service 1 to talk to this instance of service 2, it must have learned about it from discovery service* at some point, and it must have also passed active health checking from this instance of S1 to this instance of S2."

**Mobile Object**

**Server S2 provides additional services to mobile object**

Source: https://www.youtube.com/watch?v=sjpP2ynkCbo (PX-97)

44.    Furthermore, The Lyft registration server ("discovery service") is operable to register a first additional process (in addition to one of the first basic processes previously described) in association with one mobile object among the plurality of mobile objects. Two examples of this include Lyft's Smart Trip Check-In feature, which notifies either a driver or rider about unexpected route changes and incorrect drop-off locations, and Lyft's Heatmap feature, which provides custom turn-by-turn navigation to a hot zone, to incentivize drivers to visit areas with higher demand.

45.    Smart Trip Check-In includes a collection of additional services.  As to this limitation, focus is on the process that provides a notification when a rule is violated, which goes only to the specific rider who is involved in the rule violation, as opposed to all the other riders in the region. This "first additional process" of notifying a rider when they've become distanced applies only to the rider that has become distanced through, say, "far drop-off" or "no progress." For far drop-off, if the ride ends more than a certain distance from the pre-defined drop of location, the passenger has become distanced from their predetermined drop-off location, and the rule is

triggered. For no progress, if the mobile object becomes distanced in either time or meters from

where the vehicle is expected to be, then the rule is triggered:



Source: Lyft-QA-00098000 (PX-449 at 1)

46.     Dr. Malek confirmed this while testifying at trial on the '616 patent:

*Q.   And then the first additional process that is to be performed beyond the first*
*basic process that's associated with one mobile object out of a plurality of mobile*
*objects, that's check-ins; is that correct?*
*A.   That's the check-in process, yes.*

Trial Transcript, 364:17-21.



Source: Lyft-QA-00098003 (PX-449 at 4)



Source: PD3.20 (PX-638)



Source: Lyft-QA-00070621 (PX-379 at 11)

47.    In describing the "Far Drop-Off Rule" during the trial on the '616 patent, Dr. Malek

explained the functionality:

*Q.   Okay. So let's dig in and start with the Unexpected Drop-Off or Far Drop-Off*
*signal. How does that system work?*
*A.   Yeah. So this is -- remember the Far Drop-Off is the rule that it determines if*

25

*your actual  drop-off location is different from your predetermined -- predetermined location which is the place where you want to go. That's the address of where you want to go.*

*And if the system determines that at the time of drop off you are more than 800 meters --  although they've changed that to a thousand meters at a later point in time. But the point is that if the system detects that you are distanced from that predetermined destination by certain threshold, 800 meters or a thousand meters, then you -- then it sends a check-in notification to make sure you're okay. Because that's an irregularity; that's an abnormality. The system expects you to be dropped off at your destination.*

Trial Transcript, 366:19-367:12.



SOURCE CODE:

```python
class FarFromDropoffRule(BooleanRule, Statsable, Loggable):
    def __init__(self, owners: list[Owner] = []) -> None:
        super().__init__(owners=owners)
        self.meters_threshold = self.get_config_value(
            FAR_FROM_DROPOFF_THRESHOLD_METERS_KEY, 1000)

    def predicate(
        self,
        execution_context: ExecutionContext,
        context: RuleContext,
    ) -> bool:
        distance = context.ride.distance_between_dropoff_and_destination_in_meters

        if distance is None:
            return False

        return distance >= self.meters_threshold
```

Source: LYFT-QUARTZ_SC_000048 (PX-668)




- Driver pulls over and passenger exits car far from drop off location.

- Passenger receives indication that far drop off occurred.

Source: QUARTZ025314 (PX-666)



Source: Lyft-QA-00012341 (PX-267 at 1)

48.     Dr. Malek described the functionality of the "No Progress" rule during trial on the

'616 patent:

*Q.   And looking at PX-267, what are the tools that are used by Lyft to track whether a ride has become off route?*
*A.   So they do in this in two ways. The first approach is a meters-based approach. And what they do here is that they compute what is your current distance to your final destination in meters and what was the closest that you got to that destination. And using those, they're able to determine if the amount of meters that you have to go to reach your destination is increasing. And if it's increasing, then that's an indication to them that you're not following the predefined route.*

Trial Transcript, 383:3-15.

*A.   The second approach is an ETA-based approach. ETA again stands for estimated time of  arrival, and in this case they know what was your first ETA and what is your current ETA. And from those, they can determine if your ETA's increasing. And if the ETA's increasing, then they can use that to determine that the driver is potentially not following the predefined route.*

Trial Transcript, 384:7-13.

27



**SOURCE CODE:**

```python
def detect_no_progress_irregularity(
    location_updates: list[RideLocationUpdate],
    ride_measurements: RideMeasurements,
) -> tuple[NoProgressDetectionData | None, list[str]]:
    """
    This function detects when a driver is not making progress towards the current
    destination (ie: dropoff/waypoint).
    If a 'no progress' is detected, the NoProgressDetectionData object is returned.
    Otherwise, the function returns None.
    """
    valid_locations = filter_to_reliable_locations(location_updates)

    if len(valid_locations) < MIN_NUMBER_OF_LOCATION_UPDATES_FOR_DETECTION:
        return None, []

    # We fetch the needed data ahead of time so we can return this information to the
    caller.
    no_progress_detection_data = _populate_no_progress_detection_data(valid_locations,
    ride_measurements)
    eta_positive_rules = no_eta_progress_detected(no_progress_detection_data)
    distance_positive_rules = no_distance_progress_detected(no_progress_detection_data)
    positive_rules = eta_positive_rules + distance_positive_rules
    if positive_rules:
        return no_progress_detection_data, positive_rules
```

Source: LYFT-QUARTZ_SC_000263 (PX-724)




iii.  If any of the following is true, emit **no_progress_to_stop_event**

...

```
3. Current_meters_remaining_to_stop -
   min_road_distance_remaining_to_stop > 4000
4. Current_meters_remaining_to_stop /
   min_road_distance_remaining_to_stop > 1.50 AND
   Current_meters_remaining_to_stop -
   min_road_distance_remaining_to_stop > 2000
```

3. Moved more than 4000 meters away from closest point you were to destination.

4. Moved more than 150% away from the closest you were to destination AND that distance is more than 2000 meters.

Source: Lyft-QA-00012343 (PX-267 at 3)



iii.  If any of the following is true, emit **no_progress_to_stop_event**

```
1. Current_eta - first_eta > 15 minutes
2. (Current_eta - first_eta) /
   Original_duration_estimate > 1.40 AND
   Current_eta - first_eta > 5 minutes
```

1. Distance from destination has increased by more than 15 minutes.

2. Distance from destination has increased by more than 140% AND that increase is more than 5 minutes.

Source: Lyft-QA-00012344 (PX-267 at 4)

28

49.     Just as safety notifications are for specific objects only, the heatmap process is for specific objects only. Lyft's Heatmap is a process by which Lyft encourages drivers to enter certain geographical areas with a very large demand for pickups. Because Lyft knows the location of drivers, riders, and potential riders in a given region (see above), it can create these hot zones. Lyft displays the heatmap areas on the map the driver sees on his or her Lyft application. The driver is given the option to "navigate" to the heatmap area, which, if selected will provided them with turn-by-turn navigation directions to the hot zone.

50.     Dr. Malek confirmed this functionality during trial on the '616 patent:

*Q.  And can you tell us how the heatmap meets the limitations of the claim?*
*A.   Yes, so the heatmap is a feature that is provided by the Lyft platform to provide a bonus or allow the riders to make extra -- excuse me – drivers to make extra money. And the idea behind it is that in a region, there are more -- there's more demand. There are more riders than there is supply.*
*So if there are more riders than drivers, this is a way of Lyft platform incentivizing the drivers to go to that heatmap area to provide rides and also allows the drivers to make extra money.*
*And the specific process that I'm pointing to here is the navigation to heatmap, because what Lyft allows the rider -- so Lyft shows these heatmaps on a map and then provides a feature similar to what you see on the right-hand side of this screen that allows a driver to then navigate to one of those heatmaps. And this is an individualized process that is provided to a specific driver.*

Trial Transcript, 414:14-415:8.



Lyft-QA-00048197-98 (PX-652 at 1, 2)

29



Lyft-QA-00048198-200 (PX-652 at 2-4)

51.    Lyft displays the heatmap areas on the map the driver sees on his or her Lyft application. The driver is given the option to "navigate" to the heatmap area, which, if selected will provided them turn-by-turn navigation directions to the hot zone.



Lyft-QA-00048198, Lyft-QA-00048200 (PX-652 at 2, 4)



Lyft-QA-00048200 (PX-652 at 4)

52.    In addition, The Lyft Platform includes a registration server operable to register the first additional process with one mobile object agent associated with the one mobile object, and operable to register the first additional process and a call-up condition by the one mobile object agent. Just as safety notifications are for specific objects only, the heat map process is for specific objects only.

53.    As discussed above in relation to claim limitation 1[d] and 1[e], Lyft's Smart Trip Check-In and Lyft's Heatmaps features both rely on detecting changes in the location of a mobile object to work. At the trial it was established that the mobile object agent sends current location information through the mobile object server on an ongoing basis.  Such location changes are the "call-up condition" when it evidences the violation of a location rule:

> Q.  PX-513, what are we showing here?
> A.  This is showing -- this actually is not source code, but this was a technical document that was in the source code computer that I found, and this diagram, this architectural or design diagram, is showing how the driver and the passenger app, they sent location data to Lyft servers through the Internet. And it also shows that that data can then also be retrieved from Lyft servers as well.

Trial Transcript, 347:3-11.

31



LYFT-QUARTZ_SC_000123 (PX-513 at 74)

54.    Dr. Malek presented evidence that the discovery service, "registration server" holds "the latest state of the world."

*A.   Sure. So this registration server or part of the innovativeness of the invention is that the
registration server allows the sy
stem to register processes that should be provided to individual riders or drivers.
So allows for the system to be able to provide customized services or processes to
specific riders and drivers.
Q.   Okay. And so just for the record, what is the registration server in the Lyft
system?*

*A.   It's the -- it's what is shown as DS in the presentation. It stands for discovery service.*

Trial Transcript, 357:8-25.

55.      Dr. Malek testified, once again undisputed, that location is reported by the mobile object agent every 20 seconds to check whether there has been a change in location:

*A.   PX-640 is describing a process called a realtime map matching, and map matching is this process of determining where the -- the ride is, or where a mobile object is on a map. So as your GPS data is collected, it's trying to determine what road you're on. And if you are, for example -- it's tracking also whether you are on – for example, if you have a predefined route, if you're on that predefined route. And it does this, in this diagram -- or in this document, it's describing how it does this based on the last 20 seconds of data collected from the user device.*

Trial Transcript, 352:15-353:2.



56.      As noted above with respect to element 1[d], Lyft's registration server is the "discovery service," which registers and stores services, such as the first additional process. All the services the Lyft computer network can provide to a mobile object through, for example, its mobile object agent, will have an internet address (see below):

33



Source: https://www.youtube.com/watch?v=sjpP2ynkCbo (PX-97)

57.     Dr. Malek confirmed this while testifying at trial on the '616 patent:

*A. The registration server which is the discovery service here responds with the -- with the computer address of the requested service.*
*Q. And then what does that allow?*
*A. And that allows S1, which is the mobile object server, to be able to provide that service that has been requested using the computer address that he gets from the registration server. So in this case, for example, S2 could indicate this first additional process that has been provided to the mobile object.*

Trial Testimony, 358:16-25



Source: Lyft-QA-00098003 (PX-449 at 4)

34



Source: Lyft-QA-00057433 (PX-320 at 28)

58.     Dr. Malek, in describing PX-320, explained:

*A. PX-320 is a Lyft technical document that describes how the client -- and "the client" is*
*sometimes used in Lyft documents to describe a particular rider or driver with a mobile app. It's*
*describing how the check-in process is used to send a notification to the rider or driver mobile app.*

Trial Testimony, 362:1-6



Source: Lyft-QA-00012462 (PX-268 at 2)

59.     As shown, for example in PX-652, the first additional process is navigating the driver to a bonus zone, also known as a heatmap.  Lyft displays the heatmap areas on the map the driver sees on his or her Lyft application. The driver is given the option to "navigate" to the

heatmap area, which, if selected will provided them with turn-by-turn navigation directions to the hot zone.

60.    When a driver exits the zone, the icon changes color, indicating to the driver that it has become distanced from the bonus region. Each driver gets their own customized navigation to the hot zone when they are either outside the hot zone, or have moved outside of the hot zone. Because Lyft knows when a driver is not in the hot zone based on location information from the driver mobile object agent (the call-up condition), the driver is then given the option to "navigate" to the heatmap area, which, if selected will provided them with turn-by-turn navigation directions to the hot zone.

61.    Dr. Malek confirmed this functionality during trial on the '616 patent:

*Q. And can you tell us how the heatmap meets the limitations of the claim?*
*A. Yes, so the heatmap is a feature that is provided by the Lyft platform to provide a bonus or allow the riders to make extra -- excuse me – drivers to make extra money. And the idea behind it is that in a region, there are more -- there's more demand. There are more riders than there is supply.*
*So if there are more riders than drivers, this is a way of Lyft platform incentivizing the drivers to go to that heatmap area to provide rides and also allows the drivers to make extra money.*
*And the specific process that I'm pointing to here is the navigation to heatmap, because what Lyft allows the rider -- so Lyft shows these heatmaps on a map and then provides a feature similar to what you see on the right-hand side of this screen that allows a driver to then navigate to one of those heatmaps. And this is an individualized process that is provided to a specific driver.*

Trial Transcript, 414:14-415:8.



### Pacman 'Navigate to Heatmap' Product Spec

#### Overview

The goal of driver earnings is to make Lyft a driver's best economic option by making the earnings experience reliable and deterministic. We do this by making it super clear for drivers what they need to do in order to get rides and earn bonuses - i.e. drive to a heatmap, and stay there until they get a ride.

PX-652.2

Lyft-QA-00048197-98 (PX-652 at 1, 2)



○ iOS:
- Display heatmap areas on the map
- When a driver enters a purple zone during navigation, play the same audio and voiceover
- When a driver enters either zone, display a pill with the bonus amount and the respective color at the bottom of the screen. If the driver leaves the bonus area while in navigation, turn the pill to gray

PX-652.4

Driver has an entry point from which to choose to 'navigate to heatmap', which appears on HUD card. The card is dismissed if a driver x's out the card. They can bring the card back up, as today, by tapping the map markers

PX-652.3

Lyft-QA-00048198-200 (PX-652 at 2-4)



Lyft-QA-00048198, Lyft-QA-00048200 (PX-652 at 2, 4)

62.    Dr. Malek further testified:

*A.   This is showing how a driver is navigated to a heatmap. This is essentially what the driver sees on their app. And at the bottom of it, you see something called a pill. That's a Lyft terminology. And the pill indicates how much extra money you're making. So on the left-hand side in the first screenshot in that gray box you can see that that icon at the bottom says zero dollars, and it's grayed out and you see you're not making any extra bonus. And then once a driver navigates to the purple zone, this shows that they're making $2.40. And then when they eventually navigate to the pink zone, it looks like -- well, in this example, it looks like it shows $2.40 still, but basically shows how you go to a particular heatmap, you can make extra money.*

Trial Transcript, 416:4-18.

63.    Lyft displays the heatmap areas on the map the driver sees on his or her Lyft application. The driver is given the option to "navigate" to the heatmap area, which, if selected will provided them with turn-by-turn navigation directions to the hot zone:



Lyft-QA-00048200 (PX-652 at 4)

64.    Again, Dr. Malek confirmed this at trial:

*A. Yeah. So this shows that, you know, different drivers would get different navigations. Again, different drivers are in different locations, so, therefore, the*

38

*system has to provide a customized navigation for that specific driver. So this process is provided in association with one mobile object.*

Trial Transcript, 416:22-417:2.

65.     Finally, The Lyft Platform includes the mobile object server is operable to call up the first additional process in response to the call-up condition being satisfied during performance of the one mobile object agent. The Lyft system, through the Smart Trip Check-In feature, detects a drop off far from the predetermined drop off location and/or a deviation from a predetermined route in meters or minutes, triggering violation of the Far Drop-Off Rule or the No Progress Rule. In addition, the Lyft system, through the Heatmap feature, detects when a driver has left a hot zone, triggering generation of new turn-by-turn navigation.  See above in the discussion associated with element 1[f].

66.     With respect to claim 8, the Lyft Platform includes a mobile object server operable to perform a process of providing notification that the one mobile object has become distanced from a predetermined location or region, as the first additional process, including as set forth above. The Court construed "has become distanced from a predetermined location or region" to mean "has moved away from or has been moved away from any predetermined location or region, not just a final destination."

67.     Lyft's expert Dr. Goldberg also conceded that this limitation was met at least as to the Far Drop-Off signal:

1[c] a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, in association with one mobile object among the plurality of mobile objects, wherein the mobile object server is operable to perform, as the first additional process, a process of **providing notification that the one mobile object has become distanced from a predetermined location or region**.



**Dr. Goldberg**
Lyft Technical
Expert



Q. If the driver drives through this Region A and drops off in Region B, more than 1,000 meters from the drop-off point, the signal in the Lyft system will be triggered, correct?

A. Yes. It will be triggered based on the drop-off point.



Trial Transcript 912:19-913:17

PD9.66

---

1[c] a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, in association with one mobile object among the plurality of mobile objects, wherein the mobile object server is operable to perform, as the first additional process, a process of **providing notification that the one mobile object has become distanced from a predetermined location or region**.



**Dr. Goldberg**
Lyft Technical
Expert



Q. So if it's passed from Region A to Region B, the signal will be triggered in the Lyft system, correct, sir?

A. Yes.

Q. And in fact, if it goes straight through Region B -- A and into Region B more than 1,000 meters, once again, it'll be triggered in the Lyft system, correct?

A. Yes. That's right.



Trial Transcript 912:-19-913:8

PD9.67

---

1[c] a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, in association with one mobile object among the plurality of mobile objects, wherein the mobile object server is operable to perform, as the first additional process, a process of **providing notification that the one mobile object has become distanced from a predetermined location or region**.



**Dr. Goldberg**
Lyft Technical
Expert



Q. So if it's passed from Region A to Region B, the signal will be triggered in the Lyft system, correct, sir?

A. Yes. ...

Q. And in that situation, if we go back to the specification now, in the language of the specification, it's moved outside of Region A into Region B, correct?

A. Yes.



The mobile object server 220 may be operable to perform a process of providing notification that one mobile object 10 has become distanced from a predetermined location or geographical region. For example, if a mobile object 10 having a theft notification function set to ON has moved at least a reference distance from a parking position, the mobile object server 220 provides notification of theft to a registered destination. Furthermore, if a passenger has a contract for insurance that stipulates conditions such as an age limit, a passenger limit (e.g. family members only), a driving region limit (e.g. a country or state), a vehicle type, a license, a limit to a certain automobile, or the like, the mobile object server 220 may notify the passenger in response to the contract conditions being violated (e.g. if the mobile object 10 moves outside of the limited driving region).

Joint Exhibit
JX-1    At 19:33-47

Trial Transcript 912:19-913:17

PD9.68

1[c] a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, in association with one mobile object among the plurality of mobile objects, wherein the mobile object server is operable to perform, as the first additional process, a process of **providing notification that the one mobile object has become distanced from a predetermined location or region**.



**Dr. Goldberg**
Lyft Technical Expert

Q. I asked you **if I'm dropped off a mile away from my final destination, have I been moved away from my final destination**? Yes or no?

A. Yes.



| "has become distanced from a predetermined location or region" | Court's Definition |
| --- | --- |
| | "has moved away from or has been moved away from any predetermined location or region, not just a final destination." |

Trial Transcript 918:23-919:2                                                   PD9.70

1[c] a registration server operable to register a first additional process that is to be performed in addition to a first basic process common to the plurality of mobile objects, in association with one mobile object among the plurality of mobile objects, wherein the mobile object server is operable to perform, as the first additional process, a process of **providing notification that the one mobile object has become distanced from a predetermined location or region**.



**Dr. Goldberg**
Lyft Technical Expert



Q. If I've **been dropped off a mile away from here from my final destination, have I been moved away from a location or region, my final destination**?

A. Those lines you've drawn, the answer's **yes**.

Q. And in **all situations**, when these events occur, a notification will be sent, correct?

A. **A Far Drop-Off notification will be sent in those cases**.



PD9.71

## No Progress Rule

## "Driver Off-Route" Rule ("No Progress")

### Summary

Community Safety is expanding on our existing Smart Trip Check-in feature (sending check-ins to users involved in a detected ride irregularity) by defining a 'driver off-route' irregularity (prod spec). To implement the detection of this irregularity and the outreach via check-ins, we will be following the current plan for the Unified Intervention Platform. This means that the detection part of this project will involve work in ridemonitor and karma. Where the outreach piece will live is not set in stone. Currently, this logic lives in emergencyassist (for Smart Trip Check-in MVP, detection and outreach was built into emergencyassist), but we have plans to build a checkins service (server spec) which would do that outreach work instead. Timeline for checkins service is still unclear, so this spec will explore both options: implementing outreach in emergencyassist and in checkins.

Px-267.1

Source: Lyft-QA-00012341 (PX-267 at 1)

41

68.    Dr. Malek described the functionality of the "No Progress" rule during trial on the

'616 patent:

*Q. And looking at PX-267, what are the tools that are used by Lyft to track whether a ride has become off route?*
   *A. So they do in this in two ways. The first approach is a meters-based approach. And what they do here is that they compute what is your current distance to your final destination in meters and what was the closest that you got to that destination. And using those, they're able to determine if the amount of meters that you have to go to reach your destination is increasing. And if it's increasing, then that's an indication to them that you're not following the predefined route.*

   Trial Transcript, 383:3-15

*A. The second approach is an ETA-based approach. ETA again stands for estimated time of arrival, and in this case they know what was your first ETA and what is your current ETA. And from those, they can determine if your ETA's increasing. And if the ETA's increasing, then they can use that to determine that the driver is potentially not following the predefined route.*

   Trial Transcript, 384:7-13



SOURCE CODE:

```
def detect_no_progress_irregularity(
    location_updates: list[RideLocationUpdate],
    ride_measurements: RideMeasurements,
) -> tuple[NoProgressDetectionData | None, list[str]]:
    """
    This function detects when a driver is not making progress towards the current
    destination (ie: dropoff/waypoint).
    If a 'no progress' is detected, the NoProgressDetectionData object is returned.
    Otherwise, the function returns None.
    """
    valid_locations = filter_to_reliable_locations(location_updates)

    if len(valid_locations) < MIN_NUMBER_OF_LOCATION_UPDATES_FOR_DETECTION:
        return None, []

    # We fetch the needed data ahead of time so we can return this information to the
    caller.
    no_progress_detection_data = _populate_no_progress_detection_data(valid_locations,
    ride_measurements)
    eta_positive_rules = no_eta_progress_detected(no_progress_detection_data)
    distance_positive_rules = no_distance_progress_detected(no_progress_detection_data)
    positive_rules = eta_positive_rules + distance_positive_rules
    if positive_rules:
        return no_progress_detection_data, positive_rules
```

Source: LYFT-QUARTZ_SC_000263 (PX-724)

42





Source: Lyft-QA-00012343 (PX-267 at 3)

Source: Lyft-QA-00012344 (PX-267 at 3)

69.    Dr. Malek explained during trial on the '616 patent:

*Q. So the driver is driving in the exact opposite direction of where the route is telling it to do so?*
    *A. Yes.*
    *Q. Okay. So what happens next?*
    *A. And next is that the system detects that and gives me a check-in notification telling me that your ride is taking longer than expected and wants me to -- to respond if I'm okay or not.*

Trial Testimony, 309:12-19

*Q. Step 3 in the process, what is Step 3 in the process?*
    *A. So -- so, yeah, so the Step 3 is that if the system detects an irregularity or abnormality in the ride, it sends you -- it sends the rider a notification. And that notification request is basically checking if the rider's okay.*

Trial Testimony, 333:15-21

43



Lyft-QA-00048198, Lyft-QA-00048200 (PX-652 at 2, 4)

**Navigation (in-app nav design for reference):**
- When driver taps 'navigate', transition into navigation mode. Note that we will do this irrespective of the driver's 'auto-switch' to navigate setting

Lyft-QA-00048199 (PX-652 at 3)

During navigation:
- iOS:
  - Display heatmap areas on the map
  - When a driver enters a purple zone during navigation, play the same audio and voiceover
  - When a driver enters either zone, display a pill with the bonus amount and the respective color at the bottom of the screen. If the driver leaves the bonus area while in navigation, turn the pill to gray
- Android:
  - When the driver enters the purple/pink zone, shade the map with the respective colors (hexes TBD)
  - When a driver enters a purple zone during navigation, play the same audio and voiceover
  - When a driver enters either zone, display a pill with the bonus amount and the respective color at the bottom of the screen. If the driver leaves the bonus area while in navigation, turn the pill to gray
  - Display the same information in the footer as in navigation mode during a ride (ETA, distance, arrival time)

Lyft-QA-00048200 (PX-652 at 4)

70.    Discussing PX-652, Dr. Malek testified:

*Q. And looking at PX-652 at Page 4, this is Slide 165, what does this show?*
    *A. This is showing how a driver is navigated to a heatmap. This is essentially what the driver sees on their app. And at the bottom of it, you see something called a pill. That's a Lyft terminology. And the pill indicates how much extra*

*money you're making. So on the left-hand side in the first
screenshot in that gray box you can see that that icon at the bottom says zero
dollars, and it's grayed out and you see you're not making any extra bonus. And
then once a driver navigates to the purple zone, this shows that they're making
$2.40. And then when they eventually navigate to the pink zone, it looks like --
well, in this example, it looks like it shows $2.40 still, but basically shows how
you go to a particular heatmap, you can make extra money.*

Trial Testimony, 416:2-18.

71.     With respect to asserted system claims 1–9, Plaintiff alleges that Defendant has been and is engaged in direct infringing activities by making, having made, and using the server-side software and/or network of the Lyft Platform and Defendant owns or controls and operates such servers and network.

72.     With respect to asserted method claims 10–12 of the '384 patent, and to the extent that any of the asserted system claims are treated as method claims for the purpose of assessing the alleged acts of infringement, Plaintiff alleges that Defendant has been and is engaged in direct infringing activities because all steps of the claimed methods are performed by Defendant as a single entity. In particular, Plaintiff alleges that the steps of the accused ride-hailing methods performed by the Driver application of the Lyft Platform are performed by the mobile computing devices of Lyft drivers, and that such drivers are Lyft employees such that their actions constitute acts performed by Defendant. The steps of the asserted claims performed by the server-side software and/or network of the Lyft Platform are also performed by Defendant as the entity that owns or controls and operates such servers and network. On information and belief, Plaintiff further alleges that other Lyft employees, such as product development and testing engineers or driver support personnel, have and continue to use the accused methods for development, testing, and/or demonstration purposes.

73.    Plaintiff pleads in the alternative that, to the extent that Lyft drivers are independent contractors or agents rather than employees, Defendant is responsible as a direct infringer because Defendant has and continues to perform the server-side steps and Defendant has and continues to direct and control the steps performed on the driver's mobile device such that those steps are also attributable to Defendant under principles of joint infringement. Defendant is liable as a direct infringer of the asserted method claims by at least one or more of: (i) acting through drivers who are agents of Defendant with respect to the transportation services provided to riders; (ii) contracting with its drivers to perform ride-hailing services that require performance of one or more steps of the claimed methods; and (iii) conditioning the drivers' participation in Defendant's transportation services and receipt of payment upon the performance of one or more steps of the claimed methods and establishing the manner or timing of that performance.

74.    Defendant has and continues to practice infringing methods by at least providing, operating, and controlling the accused methods via the Lyft Platform computer systems and software developed, owned, and provided by Defendant, which Defendant designed to perform the methods covered by the asserted patent claims. Defendant directs and controls the method steps performed by drivers by (i) prescreening and authorizing select individuals to serve as drivers in its transportation network on behalf of Defendant; (ii) supplying the Driver app for accessing and controlling the Lyft Platform, which must be used by drivers to initiate and control the Lyft Platform throughout the entire lifecycle of each ride; (iii) dictating, via software supplied to the drivers' mobile devices and instructions to the drivers, the manner in which the Driver app operates and must be used such that, when the accused method is initiated on a driver's mobile device each step of the asserted method claims is performed in a manner dictated by the accused Lyft Platform; (iv) dictating the terms and conditions upon which drivers are paid for their services and retaining

46

the ability to terminate a driver's access to and use of the Lyft Platform if not used in accordance with Defendant's required terms; (v) advertising the Lyft Platform and its transportation arrangement services and providing instructions and directions to drivers regarding the use of the Driver app; and (vi) updating and providing ongoing support and maintenance for the accused Lyft Platform and its methodologies.

75.    Defendant conditions its drivers' use of its transportation services network upon the performance of the steps performed by the Driver app and Defendant establishes the manner or timing of its drivers' performance. Defendant requires its drivers to contractually agree to terms and conditions that provide the drivers a limited license to use the Driver app only in conjunction with Defendant's ride-hailing network. Drivers must download the Driver app to their mobile devices and utilize the Driver app, including performing the specific claim steps executed by the Driver app identified above, in order to participate in Defendant's ride-hailing transportation network and services. Defendant provides step-by-step instructions and support to its drivers telling them how to utilize the Driver app if the driver wants to pick-up and transport passengers in Defendant's transportation network. Those instructions, and the integrated sequence of events that must be performed for a driver to invoke use of the Lyft Platform and be matched with riders and directed to the rider's pick-up and destination locations, establishes the manner or timing of the drivers' performance of the claimed method steps. If drivers do not follow these precise steps, Defendant's services of matching drivers to passengers and coordinating the lifecycle of ride requests are not available.

76.    Defendant benefits by providing the Lyft Platform to attract and retain riders and drivers to increase its revenue and valuation. The drivers also receive a benefit of receiving

payment from Defendant from using the Driver app and transporting passengers to their destinations.

77.     As a result of Defendant's infringement of at least system claims 1–9, method claims 10-12, and computer program product claims 13-15 of the '384 patent, Plaintiff Quartz Auto has suffered monetary damages in an amount yet to be determined, and will continue to suffer damages in the future. Defendant is liable to Plaintiff in an amount that adequately compensates for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

78.     Defendant's wrongful acts have damaged and will continue to damage Plaintiff Quartz Auto irreparably, and Plaintiff has no adequate remedy at law for those wrongs and injuries. In addition to its actual damages, Plaintiff Quartz Auto is entitled to a permanent injunction restraining and enjoining Defendant and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on its behalf, from infringing system claims 1–9, method claims 10-12, and computer program product claims 13-15 of the '384 patent without additional compensation to Plaintiff in an amount to be determined by the Court.

79.     As a result of Defendant's infringement of claims 1-15 of the '384 patent, Plaintiff Quartz Auto has suffered monetary damages in an amount yet to be determined, and will continue to suffer damages in the future. Defendant is liable to Plaintiff in an amount that adequately compensates for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.     Defendant's wrongful acts have damaged and will continue to damage Plaintiff Quartz Auto irreparably, and Plaintiff has no adequate remedy at law for those wrongs and injuries. In addition to its actual damages, Plaintiff Quartz Auto is entitled to a permanent injunction

restraining and enjoining Defendant and its agents, servants, and employees, and all persons acting thereunder, in concert with, or on its behalf, from infringing claims 1-15 of the '384 patent without additional compensation to Plaintiff in an amount to be determined by the Court.

**COUNT II**
**WILLFUL INFRINGEMENT OF THE '384 PATENT**

81.    Lyft had knowledge of the 384 patent no later than March 9, 2026 when it was served with a permanent injunction motion.

82.    Quartz is informed and believes, and thereon alleges, that after acquiring knowledge of the Asserted Patent and its relevance to the Lyft Platform, Lyft continued to use the Lyft Platform in a manner that infringed the Asserted Patent without (1) obtaining a license to the Asserted Patent, or taking any other actions to avoid infringing the Asserted Patent. By pursuing this course of action rather than behaving in a lawful manner, Lyft improperly attempted to avoid paying fair compensation to Quartz for its use of Quartz's patented technology and/or improperly attempted to avoid having to modify the Lyft Platform, which would have resulted in problems including production delays, increased costs, and/or decreased performance.

83.    Lyft has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Quartz's patent rights. By way of example only, Lyft has continued to use the Lyft Platform accused of infringing the Asserted Patent that was in its possession, custody or control, Quartz is informed and believes, and thereon alleges, that Lyft has taken no steps to design around the Asserted Patent in the Lyft Platform, By pursuing this course of action rather than behaving in a lawful manner, Lyft improperly attempted to avoid paying fair compensation to Quartz for its use of Quartz's patented technology and/or improperly attempted to avoid having to modify the Lyft Platform, which would have resulted in problems including production delays, increased costs, and/or decreased performance.

49

84.     As a result of Lyft's infringement of the Asserted Patent, Quartz has been damaged. Quartz is entitled to recover enhanced damages for the damage it has sustained as a result of Lyft's wrongful acts in an amount subject to proof at trial.

85.     It is not possible to quantify the full damages from Lyft's behavior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Quartz Auto respectfully requests that this Court enter:

A.     A judgment in favor of Plaintiff Quartz Auto that Defendant has been and is infringing at least claims 1-15 of the '384 Patent pursuant to 35 U.S.C. §§ 271(a) and/or 271(b);

B.     A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing any of claims 1-15 of the '384 Patent, without additional compensation to Plaintiff in an amount to be determined by the Court;

C.     A judgment awarding Plaintiff Quartz Auto all damages adequate to compensate it for Defendant's infringement of the Quartz Auto Patent under 35 U.S.C. § 284, and in no event less than a reasonable royalty for Defendant's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law, and also any past damages permitted under 35 U.S.C. § 286, as a result of Defendant's infringement of at least claims 1-15 of the '384 Patent.

D.     Enhanced damages for Lyft's willful infringement up to three times the amount of damages, pursuant to 35 U.S.C. § 284.

E.     An assessment of costs, including reasonable attorney fees pursuant to 35 U.S.C. § 285, and prejudgment interest against Defendant; and

F.     Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to FED. R. CIV. P. 38, Plaintiff Quartz Auto hereby demands a trial by jury on all issues so triable.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Max Ciccarelli*

Max Ciccarelli (SBN 00787242)
**CICCARELLI LAW FIRM**
100 N. 6th Street, Suite 503
Waco, Texas 76701
Telephone: (214) 444-8869
Email: Max@CiccarelliLawFirm.com

Jason Sheasby (*pro hac vice* forthcoming)
Andrew Strabone (*pro hac vice* forthcoming)
Isabella Chestney (*pro hac vice* forthcoming)
Erick Franklund (*pro hac vice* forthcoming)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: jsheasby@irell.com
Email: astrabone@irell.com
Email: ichestney@irell.com
Email: efranklund@irell.com

Michael Rosen (*pro hac vice* forthcoming)
**IRELL & MANELLA LLP**
750 17th Street NW, Suite 850
Washington, DC 20006
Email: mrosen@irell.com
Telephone: (202) 777-6500
Facsimile: (310) 556-5272

Mary F. Fetsco (*pro hac vice* forthcoming)
**FITCH, EVEN, TABIN & FLANNERY LLP**
120 S. LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007
Email: mfetsco@fitcheven.com

*Attorneys for Plaintiff*
*Quartz Auto Technologies LLC*

## CERTIFICATE OF SERVICE

This document is being served with the Summons.

/s/ Max Ciccarelli